NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| ARACELIS TOSCANO,<br><br>　　　　　　　　　Plaintiff,<br><br>　v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>　　　　　　　　　Defendant. | Civil Action No. 2:16-cv-06488-SDW<br><br><br>**OPINION**<br><br><br>August 9, 2017 |

**WIGENTON,** District Judge.

　　This matter comes before the Court on Plaintiff Aracelis Toscano's ("Plaintiff") appeal of the final administrative decision of the Commissioner of Social Security ("Commissioner"), with respect to Administrative Law Judge Dennis O'Leary's ("ALJ O'Leary", "the ALJ") denial of Plaintiff's claim for Disability Insurance Benefits ("DIB") under the Social Security Act ("the Act"). This appeal is decided without oral argument pursuant to Federal Rule of Civil Procedure 78. This Court has subject matter jurisdiction pursuant to 42 U.S.C. § 405(g). Venue is proper under 28 U.S.C. § 1391(b). For the reasons set forth below, the Commissioner's decision is **REVERSED** and this matter is **REMANDED** for further proceedings.

# I. PROCEDURAL AND FACTUAL HISTORY

## A. Procedural History

On November 27, 2012, Plaintiff filed a Title II application for DIB, alleging disability as of November 1, 2010, based on migraine headaches, neck pain, and back pain. (Tr. 126, 128.) Plaintiff's application was denied initially on March 26, 2013, and upon reconsideration on July 24, 2013. (Tr. 65, 71.) Plaintiff requested a hearing, which was held on January 28, 2015, before ALJ O'Leary. (Tr. 28.) Both Plaintiff and vocational expert Patricia Shashona ("VE Shashona") testified. (*Id.*) On April 27, 2015, ALJ O'Leary issued an unfavorable decision, finding Plaintiff was not disabled and denying her application for DIB. (Tr. 13-27.) On July 26, 2016, the Appeals Council denied Plaintiff's request for review. (Tr. 5.) Plaintiff now requests that this Court reverse the ALJ's decision. (Pl.'s Br. at 25.)

## B. Factual History

### 1. Personal and Employment History

Plaintiff was born on June 6, 1968. (Tr. 128.) In her work history report, Plaintiff indicated that she was a self-employed beautician from January 1998 until November 2010. (Tr. 158.) She earned $15,000 per year. (Tr. 159.) Plaintiff reported that, in this job, she was required to stand for four hours, kneel for four hours, walk for four hours, crouch for four hours, climb for four hours, and stoop for four hours each day. (Tr. 159.) She was also required to write, type, and handle small objects for four hours each day. (Tr. 159.) She most frequently lifted ten pounds, but lifted up to twenty pounds on occasion. (Tr. 159.)

### 2. Medical History

*a. Back Pain*

On October 25, 2007, an MRI of Plaintiff's cervical spine revealed "prominent central herniation of the C4-C5 disc," central herniation at C5-C6, bulging of the C6-C7 disc, and narrowing of the right-sided neural foramen at the C6-C7 level. (Tr. 235.) An October 2010 MRI showed, among other impressions, disc herniation at C3-C4, resulting in thecal sac compression; disc herniation at C4-C5, resulting in thecal sac compression; bilateral neural foraminal narrowing at C5-C6; and disc herniation at C6-C7. (Tr. 236-37.)

Between February 7, 2008 and January 21, 2011, Plaintiff underwent physical therapy for right cervical radiculopathy at the Physical Medicine and Rehabilitation Center ("PM&R") of Dr. Daniel Mendez ("Dr. Mendez") in Englewood, NJ. (Tr. 208-33.) In her initial evaluation, Plaintiff presented with intermittent tingling in the right arm and neck pain into the right shoulder and elbow. (Tr. 205.)

The record shows that Plaintiff sought treatment at the North Hudson Community Action Corporation ("North Hudson") in Englewood, New Jersey from September 2012 through March 2013. (Tr. 242-53.) In September 2012, Dr. Alexandra Gottdiener ("Dr. Gottdiener") diagnosed Plaintiff with cervicalgia and ordered X-rays of the neck. She also prescribed Naprosyn. (Tr. 247-48.) The X-ray revealed mild degenerative disc space narrowing at C5-C6 and mild hypertrophy at C4-C5 and C5-C6. (Tr. 253.) The impression was "mild cervical spondyloarthropathy." (*Id.*)

North Hudson doctor Nzaila Biria ("Dr. Biria") subsequently ordered an MRI of Plaintiff's cervical spine, which was performed on December 4, 2012. (Tr. 245, 250.) The findings showed no spinal cord signal abnormality; that Plaintiff's spinal canal is narrow on a congenital basis; no spinal stenosis at C2-C3; and a disc osteophyte and uncovertebral spurring at both C3-C4 and C5-

C6. (Tr. 250.) As a result, Plaintiff was referred to Dr. Ricky Racela ("Dr. Racela") with North Hudson. (Tr. 242.) Dr. Racela diagnosed cervicalgia and referred Plaintiff to neurosurgery. (Tr. 243.) Dr. Racela also prescribed both Gabapentin and Neurontin. (*Id.*)

Following a two year hiatus from physical therapy, Plaintiff sought treatment at Englewood Hospital's Department of Rehabilitation Medicine from October 2012 through December 2013. (Tr. 272-92.) Her significant diagnoses included neck pain and disc herniation, and discharge guidelines provided that Plaintiff perform neck stretches daily and refrain from lifting anything over shoulder height. (Tr. 272, 292.)

In subsequent visits with North Hudson doctors, Plaintiff was diagnosed with spinal stenosis with severe symptoms. (Tr. 295.) In a medical source statement provided to the Department of Disability Services ("DDS"), North Hudson internal medicine doctor Youssef Yaacoub ("Dr. Yaacoub") stated that Plaintiff had severe cervical stenosis with radicular symptoms and that Plaintiff could never lift or carry any weight. (Tr. 300.)

### b. *Migraines*

Plaintiff sought treatment for her headaches from neurologist Dr. Joseph Willner ("Dr. Willner") in March and April 2011. (Tr. 238-40.) Dr. Willner diagnosed Plaintiff with migraines and drug withdrawal syndrome. (Tr. 239.) Upon meeting with Dr. Willner, Plaintiff was taking up to ten Advil tablets each day. (Tr. 238.) Dr. Willner emphasized a need to withdraw from ibuprofen and prescribed Topirimate. (Tr. 240.) This medication significantly improved Plaintiff's headaches, however the record indicates that Plaintiff later stopped taking prescribed medications as they made her nauseous. (Tr. 240, 242.)

*c. State Agency Assessments*

Plaintiff underwent two State Agency physical Residual Functional Capacity ("RFC") Assessments following her application for DIB. (Tr. 44-61.) State Agency consultant Dr. Morris Feman ("Dr. Feman") performed Plaintiff's initial assessment on March 26, 2013. (Tr. 44.) Dr. Feman reviewed Plaintiff's medical records, including those from North Hudson and Dr. Mendez, in determining that Plaintiff was not disabled. (Tr. 45-46, 50.) Dr. Feman diagnosed Plaintiff with severe spine disorders and migraines and stated that the "totality of the evidence…support[ed] proposed light RFC." (Tr. 48-49.) Exertional limitations included the ability to sit, stand, or walk for six hours in an eight hour work day, and the ability to frequently lift ten pounds. (Tr. 48.) He opined that Plaintiff was partially credible but that Plaintiff's statements were not fully supported by the medical evidence. (*Id.*)

Dr. Hortensia Kelly ("Dr. Kelly") performed a subsequent physical RFC assessment on July 24, 2017. (Tr. 53.) Dr. Kelly noted no new allegations and affirmed Dr. Feman's prior assessment. (Tr. 57.)

### 3. Function Report

On December 26, 2012, Plaintiff completed a function report. (Tr. 150.) Plaintiff described her daily activities as staying home, resting, watching television, and going to medical appointments. (*Id.*) Although Plaintiff's hobbies include reading and watching television, she reported needing to take frequent breaks due to difficulty sitting in the same position for too long. (Tr. 154.) Plaintiff reported that she shops for light groceries and cooks daily, although she cannot make elaborate meals. (Tr. 152-53.) In addition, Plaintiff noted difficulty sleeping, dressing, bathing, caring for her hair, and shaving. (Tr. 151.) Plaintiff does not drive, only goes outside to see doctors, and needs help with house and yard work. (Tr. 152-53.) Finally, Plaintiff reported

that she can only walk half of a block before needing to rest, and her condition affects her ability to lift, walk, sit, bend, stand, and reach. (Tr. 155.)

### 4. Hearing Testimony

During the January 28, 2015 hearing, Plaintiff testified that she stopped working as a hairstylist in 2010 because of arm pain and migraines. (Tr. 33-34.) Plaintiff explained that she experiences pain in her right arm that begins at the top of her shoulder and radiates down her arm to her fingertips, causing difficulty sleeping and lifting. (Tr. 34, 37.) Plaintiff reported that her condition has worsened since 2010, and although she took medication for her migraines, she reported feeling like she was experiencing a stroke and palpitations. (Tr. 35.) Plaintiff also testified that she experiences neck pain because she has a herniated disc. (Tr. 35-36.) Plaintiff watches television daily but feels nauseous and sick from the light. (Tr. 38.) Although she was not seeing a doctor at the time of the hearing, she was receiving therapy for her arm. (*Id.*)

VE Shashona testified that Plaintiff's previous occupation as a cosmetologist or a beautician is a skilled occupation and is customarily performed at the light physical demand level. (Tr. 39.) VE Shashona stated that a hypothetical individual, who cannot lift the right arm overhead but otherwise has no other exertional or non-exertional limitations, could perform some of the claimant's past relevant work. (*Id.*) VE Shashona also testified that if the same hypothetical individual also has a reduced ability to concentrate and focus as a result of the pain and is therefore restricted to jobs of a simple and repetitive nature, the limitations would preclude Plaintiff's previous work. (Tr. 40.) The vocational expert also testified that an individual limited to simple and routine jobs with no overhead reaching of the right upper extremity could perform the occupation of a hand packager at the medium physical demand level. (Tr. 41.) If the same hypothetical individual has no effective use of the right arm, VE Shashona stated, there would be

no jobs for the individual. (Tr. 41.) Finally, VE Shashona testified that a limitation of being off task for up to fifteen percent of the work day because of a reduced ability to concentrate and focus, or a limitation that an individual could not go to work for three or more days per month for any medical reason, would preclude jobs at any exertional level for the individual.

## II. LEGAL STANDARD

### A. Standard of Review

In Social Security appeals, this Court has plenary review of the legal issues decided by the Commissioner. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). Yet, this Court's review of the ALJ's factual findings is limited to determining whether there is substantial evidence to support those conclusions. *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999).

Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (internal citation and quotations omitted). Thus, substantial evidence is "less than a preponderance of the evidence, but 'more than a mere scintilla.'" *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x. 613, 616 (3d Cir. 2009) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Importantly, "[t]his standard is not met if the Commissioner 'ignores, or fails to resolve, a conflict created by countervailing evidence.'" *Bailey*, 354 F. App'x. at 616 (quoting *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983)). However, if the factual record is adequately developed, "the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." *Daniels v. Astrue*, No. 4:08-cv-1676, 2009 WL 1011587, at *2 (M.D. Pa. Apr. 15, 2009) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966) (internal quotation marks omitted)). "The ALJ's decision may not be set aside merely because [a

reviewing court] would have reached a different decision." *Cruz v. Comm'r of Soc. Sec.*, 244 F. App'x. 475, 479 (3d Cir. 2007) (citing *Hartranft*, 181 F.3d at 360). This Court is required to give substantial weight and deference to the ALJ's findings. *See Scott v. Astrue*, 297 F. App'x. 126, 128 (3d Cir. 2008). Nonetheless, "where there is conflicting evidence, the ALJ must explain which evidence he accepts and which he rejects, and the reasons for that determination." *Cruz*, 244 F. App'x. at 479 (citing *Hargenrader v. Califano*, 575 F.2d 434, 437 (3d Cir. 1978)).

In considering an appeal from a denial of benefits, remand is appropriate "where relevant, probative and available evidence was not explicitly weighed in arriving at a decision on the plaintiff's claim for disability benefits." *Dobrowolsky v. Califano*, 606 F.2d 403, 407 (3d Cir. 1979) (quoting *Saldana v. Weinberger*, 421 F. Supp. 1127, 1131 (E.D. Pa. 1976) (internal quotation marks omitted). Indeed, a decision to "award benefits should be made only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits." *Podedworny v. Harris*, 745 F.2d 210, 221–22 (3d Cir. 1984) (citations omitted).

### B. The Five-Step Disability Test

A claimant's eligibility for social security benefits is governed by 42 U.S.C. § 1382. An individual will be considered disabled under the Act if the claimant is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment" lasting continuously for at least twelve months. 42 U.S.C. § 423(d)(1)(A). The impairment must be severe enough to render the individual "not only unable to do his previous work but [unable], considering his age, education, and work experience, [to] engage in any kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). A claimant must show that the "medical signs and findings" related to his or her ailment have been

"established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce the pain or other symptoms alleged . . . ." 42 U.S.C. § 423(d)(5)(A).

To make a disability determination, the ALJ follows a five-step sequential analysis. 20 C.F.R. §§ 404.1520(a), 416.920(a); *see also Cruz*, 244 F. App'x at 480. If the ALJ determines at any step that the claimant is or is not disabled, the ALJ does not proceed to the next step. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

Step one requires the ALJ to determine whether the claimant is engaging in substantial gainful activity ("SGA"). 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). SGA is defined as work that "[i]nvolves doing significant and productive physical or mental duties . . . for pay or profit." 20 C.F.R. §§ 404.1510, 416.910. If the claimant engages in SGA, the claimant is not disabled for purposes of receiving social security benefits regardless of the severity of the claimant's impairments. *See* 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the individual is not engaging in SGA, the ALJ proceeds to step two.

Under step two, the ALJ determines whether the claimant suffers from a severe impairment or combination of impairments that meets the duration requirement found in Sections 404.1509 and 416.909. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or a combination of impairments is not severe when medical and other evidence establishes only a slight abnormality or combination of abnormalities that would have a minimal effect on an individual's ability to work. 20 C.F.R. §§ 404.1521, 416.921; Social Security Rule ("SSR") 85-28, 96-3p, 96-4p. An impairment or a combination of impairments is severe when it significantly limits the claimant's "physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c). If

the ALJ does not find severe impairment or combination of impairments, the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the ALJ finds a severe impairment or combination of impairments, the ALJ then proceeds to step three.

Under step three, the ALJ determines whether the claimant's impairment or combination of impairments is equal to, or exceeds, one of those included in the Listing of Impairments in 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If an impairment or combination of impairments meets the statutory criteria of a listed impairment as well as the duration requirement, the claimant is disabled and entitled to benefits. 20 C.F.R. §§ 404.1520(d), 416.920(d). If, however, the claimant's impairment or combination of impairments does not meet the severity of the listed impairment, or if the duration is insufficient, the ALJ proceeds to the next step.

Before undergoing the analysis in step four, the ALJ must determine the claimant's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(a), 404.1520(e), 416.920(a), 416.920(e). An individual's RFC is the individual's ability to do physical and mental work activities on a sustained basis despite limitations from his or her impairments. 20 C.F.R. §§ 404.1545, 416.945. The ALJ considers all impairments in this analysis, not just those deemed to be severe. 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2); SSR 96-8p. After determining a claimant's RFC, step four then requires the ALJ to determine whether the claimant has the RFC to perform the requirements of his or her past relevant work. 20 C.F.R. §§ 404.1520(e)-(f), 416.920(e)-(f). If the claimant is able to perform his or her past relevant work, he or she will not be found disabled under the Act. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f), 416.920(a)(4)(iv), 416.920(f). If the claimant is unable to resume his or her past work, the disability evaluation proceeds to the fifth and final step.

At step five, the ALJ must determine whether the claimant is able to do any other work, considering his or her RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(v),

416.920(a)(4)(v). Unlike in the first four steps of the analysis where the claimant bears the burden of persuasion, the burden shifts to the ALJ at step five to determine whether the claimant is capable of performing an alternative SGA present in the national economy. 20 C.F.R. §§ 404.1520(g)(1) (citing 404.1560(c)), 416.920(g)(1) (citing 416.960(c)); *Kangas v. Bowen*, 823 F.2d 775, 777 (3d Cir. 1987). At this point in the analysis, the Social Security Administration ("SSA") is "responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that [the claimant] can do, given [the claimant's RFC] and vocational factors." 20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2). If the claimant is unable to do any other SGA, he or she is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

### III. DISCUSSION

On appeal, Plaintiff seeks reversal of the Commissioner's decision on two bases. First, Plaintiff argues that the ALJ improperly evaluated the medical evidence and improperly assessed Plaintiff's RFC. (Pl.'s Br. at 10.) Second, Plaintiff argues that the ALJ erred in failing to include all of Plaintiff's limitations in the hypotheticals presented to the vocational expert. (Pl.'s Br. at 25.)

After performing the five-step disability test, ALJ O'Leary found that Plaintiff was not disabled within the meaning of the Act from November 1, 2010, through the April 27, 2015 decision. (Tr. 23.) This determination was based on an RFC assessment that Plaintiff could "perform a full range of work at all exertional levels but with the following nonexertional limitations: she cannot lift her right arm overhead and she is limited to simple and repetitive work to account for pain." (Tr. 19.) The ALJ relied on reports from the State Agency physicians and found that the objective medical evidence of record did not provide a basis for finding greater limitations. (Tr. 20-21.) This objective medical evidence included Dr. Yaacoub's reports, to which

the ALJ afforded "little weight," finding them unsupported and prepared for the purpose of obtaining DIB. (Tr. 21.) Finally, the ALJ determined that claimant's statements concerning the intensity and persistence of her symptoms were not credible. (Tr. 20.)

At step five of the disability test, the ALJ found that jobs exist in significant numbers that Plaintiff can perform. (Tr. 22.) The ALJ stated, however, that Plaintiff's ability to "perform work at all exertional levels has been compromised by nonexertional limitations." (*Id.*)

This Court finds that the Commissioner's decision is not supported by substantial credible evidence, and thus will remand this action for further proceedings. Specifically, the hypotheticals presented to VE Shashona, as well as ALJ O'Leary's RFC analysis, excluded several of Plaintiff's limitations, including those caused by Plaintiff's migraines and herniated discs. For example, the ALJ did not include Plaintiff's history of migraines. (Tr. 239.) ALJ O'Leary determined that Plaintiff's migraines were not severe, despite a medical report from State Agency physician Dr. Feman, which indicated that Plaintiff's migraines were of notable severity. (Tr. 48.)

Additionally, the ALJ found that Plaintiff's care was limited to physical therapy and mild over-the-counter medications. (Tr. 20.) However, the record shows that Plaintiff's consumption of over-the-counter ibuprofen was extensive enough to result in a diagnosis of drug withdrawal syndrome. (Tr. 238.) Plaintiff was also prescribed medications such as Naprosyn, Amitriptyline, and Topirimate, but stopped taking them either because they made her nauseous or were not covered by her insurance. (Tr. 242.) Further, in addition to Plaintiff's years of physical therapy, doctors recommended surgery to repair Plaintiff's herniated discs, however, it was not an option because it was not covered by Plaintiff's insurance. (Tr. 295.)

Finally, Plaintiff's herniated discs are evident in MRIs conducted in October of 2007 and 2010. (Tr. 205-37.) These reports, along with Plaintiff's subjective complaints and other medical

records, support a finding of at least some additional limitations. For example, the State Agency found that Plaintiff had a "light" maximum sustained work capability and exertional limitations. (Tr. 48, 50.) The ALJ should further explain his conclusion that Plaintiff has no exertional limitations but that Plaintiff's ability to work at all exertional levels has been compromised by nonexertional limitations. (Tr. 22.)

## IV. CONCLUSION

Because this Court finds that ALJ O'Leary's factual findings are not supported by substantial credible evidence, the Commissioner's decision is **REVERSED** and **REMANDED** for further proceedings.

*s/ Susan D. Wigenton*
**SUSAN D. WIGENTON**
**UNITED STATES DISTRICT JUDGE**

Orig: Clerk
cc: Parties